IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FORCE MOS TECHNOLOGY CO., LTD., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00460-JRG |
| | § | |
| ASUSTEK COMPUTER, INC., | § | |
| *Defendant*. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are (1) Defendant ASUSTek Computer, Inc.'s ("Defendant") Motion for Summary Judgment as to the '409 Patent for Lack of Standing (Dkt. No. 166, the "Standing MSJ"), (2) Plaintiff Force MOS Technology, Co., Ltd.'s ("Plaintiff" and with Defendant, the "Parties") Motion *in Limine* No. 4 (Dkt. No. 256), and (3) Defendant's Motion *in Limine* No. 5 (Dkt. No. 257). Having considered the motions, the associated briefing, and all documents submitted in support thereof, the Court finds that (1) the Standing MSJ should be **DENIED**, (2) Plaintiff's Motion *in Limine* No. 4 should be **GRANTED**, and (3) Defendant's Motion *in Limine* No. 5 should be **DENIED**. Additionally, the Court is tentatively inclined to **GRANT** summary judgment as to Plaintiff's constitutional standing to assert the '409 Patent under Rule 56(f).

I.   **INTRODUCTION**

On March 7, 2023, Plaintiff filed its First Amended Complaint for Patent Infringement (the "FAC"). (Dkt. No. 13.) In the FAC, Plaintiff asserts that Defendant infringes U.S. Patent No. 7,812,409 (the "'409 Patent"), which is titled "Trench MOSFET with Cell Layout, Ruggedness,

Truncated Corners." (*Id*. ¶¶ 96–106.) Plaintiff alleges that it "is the owner by assignment from the inventor Fwu-Iuan Hshieh[1] of all right, title, and interest in and to" the '409 Patent. (*Id*. ¶ 30.)

On November 29, 2006, Dr. Hshieh executed an agreement to assign "the entire right, title and interest in" an application titled Trench MOSFET with Cell Layout to Improve Ruggedness "and [the] invention therein disclosed" to "Force-MOS Technology Corporation, having a place of business at Grand Cayman, Cayman Island, British West Indise [sic]." (Dkt. No. 153-3, PageID #: 6007 (the "2006 Assignment").) Less than a week later, Dr. Hshieh filed U.S. Patent Application No. 11/633,366 (the "'366 Application") on December 4, 2006 and recorded his assignment with the Patent and Trademark Office (the "PTO"). (*Id*. at PageID #: 6006.)

While the '366 Application was pending, Plaintiff and "FORCE MOS TECHNOLOGY Co., Ltd. (Cayman Islands)" entered an "Authorisation [sic] Agreement" on November 2, 2009. (*Id*., PageID #: 6009.) According to the Authorisation Agreement, Plaintiff and Force Mos Technology Co., Ltd. (Cayman Islands) agreed that Plaintiff "is the inventor and actual owner of US patents as [sic] Appendix A." (*Id*.) Plaintiff and Force MOS Technology Co., Ltd. (Cayman Islands) further agreed "to sign a patent assignment agreement, that (1) the Patents [listed in Appendix A] are directly returned to [Plaintiff] on the effective date of the patent assignment agreement and (2) [Force MOS Technology Co., Ltd. (Cayman Islands)] fully authorises [sic] [Plaintiff] to determine and fill in the effective date." (*Id*.) Appendix A to the agreement does not list any U.S. Patents; instead, it lists several U.S. Patent Applications. (*Id*. at PageID #: 6011.) Among those applications is the '366 Application. (*Id*.)

In addition to the Authorisation Agreement, Plaintiff and Force MOS Technology Co., Ltd. (Cayman Islands) entered a "Patent Assignment Agreement." (*Id*. at PageID #: 6012.) According

---

[1] The Parties spell Dr. Hshieh's name differently. Plaintiff spells it "Hshieh" and Defendant spells it "Hsieh." The Court will follow the spelling on the face of the '409 Patent: "Hshieh." (Dkt. No. 144-3.)

2

to the Patent Assignment Agreement, patent applications listed in Appendix A to the agreement "are directly return [sic] to [Plaintiff] without any conditions and without any efforts on the Effective Date defined in this Agreement." (*Id.*) The Patent Assignment Agreement states that it "shall be effective on October 5th, 2011" and assigns the '366 Application to Plaintiff. (*Id.* at PageID #: 6012, 6014.)

Both the Authorisation Agreement and the Patent Assignment Agreement state that "[t]he laws of the Republic of China [*i.e.*, Taiwan] shall govern the validity, construction, enforcement, and interpretation of this Agreement." (*Id.* at PageID #: 6009, 6012.) The Authorisation Agreement and the Patent Assignment Agreement were signed (1) by Ching-Cheng Chang on behalf of Plaintiff, and (2) by Ming-Tao Chung on behalf of Force MOS Technology Co., Ltd. (Cayman Islands). (*Id.* at PageID #: 6010, 6013.) Plaintiff recorded the Authorisation Agreement and the Patent Assignment Agreement with the PTO on July 18, 2024. (Dkt. No. 321-1 at PageID #: 17489.)

On October 12, 2010, the '409 Patent issued from the '366 Application. (Dkt. No. 144-3.) The '409 Patent lists Mr. Hshieh as the sole named inventor and was originally assigned to Force-MOS Technology Corp. (KY). (*Id.*) The "KY" designation indicates that this is a Cayman Islands entity. (Dkt. No. 196 at 5 n.3.) Importantly, the Parties agree that Force-MOS Technology Corp. (KY) has never existed. (Dkt. Nos. 196 at 1, 231 at 3–4 (Defendant arguing that "Dr. Hsieh intentionally transferred his interest in the '409 Patent to Force MOS Cayman Corp.—a non-existent entity.").)

## II.   LEGAL STANDARD

To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Regional circuit

3

law governs standards for the "dismissal of a complaint for lack of standing unless the issue is unique to patent law and therefore exclusively assigned to the Federal Circuit." *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021). Here, Federal Circuit law governs an entity's constitutional standing in a patent-infringement action. *See WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010). A defect in subject matter jurisdiction may be raised at any time, and neither waiver, estoppel, nor the parties' consent may overcome it. *See Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993); *see also Diggs v. Dep't Hous. & Urb. Dev.*, 670 F.3d 1353, 1355 (Fed. Cir. 2011).

### III. ANALYSIS

#### A. The Standing MSJ (Dkt. No. 166)

Defendant challenges standing for two reasons. First, Defendant argues that Plaintiff does not have standing because Mr. Hshieh assigned his rights in the '409 Patent to a non-existent entity. Second, Defendant argues that the 2009 Patent Assignment Agreement is "ineffective" because it fails to satisfy Taiwanese law.

However, before analyzing Defendant's standing challenges, the Court must determine whether Defendant challenges Plaintiff's constitutional standing to assert the '409 Patent, whether Defendant challenges Plaintiff's ability to meet the statutory requirements of 35 U.S.C. § 281 (sometimes referred to as "prudential" or "statutory" standing), or whether Defendant challenges both. During the pre-trial conference, counsel for Defendant stated on the record that Defendant was only challenging "statutory standing." (Dkt. No. 315 at 18:21–19:3.) Defendant more recently attempted to reverse course, arguing in its briefing that "Plaintiff lacked both statutory *and* constitutional standing to assert the '409 Patent." (Dkt. No. 319 at 1.)

Notwithstanding Defendant's inability to clearly state the bases of its challenge, the Court finds that, based on the contents of the briefing, Defendant's challenge is limited to constitutional

standing. Defendant does not argue that Plaintiff split its rights in the '409 Patent such that it does not have all substantial rights in the '409 Patent. Rather, Defendant argues that Plaintiff had *no* rights in the '409 Patent as of the filing of the above-captioned case. Defendant essentially says that Plaintiff either has all the rights or none of them. Defendant's challenge can be reduced to one question: Did Plaintiff have at least one exclusionary right in the '409 Patent when it filed suit? On the record before the Court and for the following reasons, the Court tentatively finds that the answer is yes, and, as such, Plaintiff has constitutional standing to assert the '409 Patent.

### 1. The 2006 Assignment

Defendant argues that Plaintiff does not have standing to assert the '409 Patent because Dr. Hshieh assigned his rights in the '409 Patent to the non-existent Force-MOS Technology Corp. (KY). (Dkt. No. 166 at 4.) According to Defendant, because Dr. Hshieh assigned his rights in the '409 Patent to a non-existent entity, the assignment "is void as a matter of law." (*Id.*) Defendant further argues that there is no direct evidence showing that Dr. Hshieh intended to assign his invention to Force MOS Technology Co., Ltd. (Cayman Islands). (Dkt. No. 231 at 2–3.)

As an initial matter and as noted above, it is undisputed that Force-MOS Technology Corp. (KY) does not exist. Also, it is undisputed that Force MOS Technology Co., Ltd. (Cayman Islands) is the only Force MOS entity located in the Cayman Islands. Further, Defendant does not dispute Dr. Ming-Tao Chung's sworn statement that "[a]s part of Dr. Hshieh's employment terms at Force MOS Technology Co., Ltd. in Taiwan and Force MOS Technology Co., Ltd. (Cayman Islands), he had an obligation to assign any patents on the technology he developed to either Force MOS Technology Co, Ltd. in Taiwan or Force MOS Technology Co., Ltd. (Cayman Islands)." (Dkt. No.

153-3 ¶ 8.)[2] Finally, it is undisputed that the 2009 Patent Assignment Agreement is between Force MOS Technology Co., Ltd. and Force MOS Technology Co., Ltd. (Cayman Islands). (Dkt. No. 153-3 at PageID #: 6012.)

"Numerous courts have found that errors in an assignment do not necessarily preclude a finding of standing." *Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-00163, 2012 WL 2995997, at *4 (E.D. Tex. June 4, 2012) (quoting *Southwest Efuel Network, LLC v. Transaction Tracking Techs., Inc.*, No. 2:07-CV-00311, 2009 WL 4730464, at *4 (E.D. Tex. Dec. 7, 2009)). Here, the 2006 Assignment is ambiguous on its face because it assigns all rights to Force-MOS Technology Corp. (KY)—a non-existent entity. *See id.* at *3 (finding an assignment agreement between an entity and a non-existent entity ambiguous on its face). The Court should therefore properly consider extrinsic evidence to address such ambiguity.

Here, the extrinsic evidence indicates that Force MOS Technology Co., Ltd. (Cayman Islands) was the intended assignee in the 2006 Assignment. As stated above, it is undisputed that Dr. Hshieh had an assignment obligation to one of two entities: Force MOS Technology Co, Ltd. in Taiwan or Force MOS Technology Co., Ltd. (Cayman Islands) (the only Force MOS entity located in the Cayman Islands). It is further undisputed that in the 2009 Patent Assignment Agreement, Force MOS Technology Co., Ltd. (Cayman Islands) assigned its rights in and to the '366 Application to Plaintiff. It is apparent to the Court that Plaintiff intended to assign the '409 Patent to Force MOS Technology Co., Ltd. (Cayman Islands) and that Plaintiff in fact believed that the '409 Patent was assigned to Force MOS Technology Co., Ltd. (Cayman Islands). Plaintiff persuasively argues that Force MOS Technology Co., Ltd. (Cayman Islands) used several names

---

[2] Defendant attacks Dr. Chung's declaration because he "was not a party to the 2006 Patent Assignment." (Dkt. No. 231 at 3.) However, Defendant fails to dispute, or even attempt to dispute, Dr. Chung's statements regarding Dr. Hshieh's assignment obligations.

6

interchangeably and "[a]ll contracting parties intended and understood that the '409 Patent was to be assigned from Dr. Hshieh to [Force MOS Technology Co., Ltd. (Cayman Islands)], and then from [Force MOS Technology Co., Ltd. (Cayman Islands)] to Plaintiff." (Dkt. No. 196 at 9.)

Based upon Dr. Hshieh's obligations, the terms of the 2009 Patent Assignment Agreement, and the interchangeability of Force MOS Technology Co., Ltd. (Cayman Islands)'s name, the Court finds that Dr. Hshieh intended to assign the '366 Application to Force MOS Technology Co., Ltd. (Cayman Islands) rather than the non-existent Force-MOS Technology Corp. (KY). Under these particular facts, the 2006 Assignment conveyed Dr. Hshieh's rights in the '366 Application to Force MOS Technology Co., Ltd. (Cayman Islands).[3]

### 2. The 2009 Patent Assignment Agreement

Next, Defendant argues that the 2009 Patent Assignment Agreement is ineffective "because the assignee, [Plaintiff], has not accepted the assignment." (Dkt. No. 166 at 7.) According to Defendant, all of Plaintiff's "Supervisors" were required to sign the 2009 Patent Assignment Agreement under Taiwanese law. (*Id.*) However, Defendant states that less than all of Plaintiff's supervisors signed the 2009 Patent Assignment Agreement. In fact, only Mr. Ching-Cheng Chang executed this document on behalf of Plaintiff. (*Id.* at 8.)

In response, Plaintiff argues that Mr. Chang signed the 2009 Patent Assignment Agreement on behalf of himself and Mr. Chi-Ku Lin, who was Plaintiff's only other Supervisor. (Dkt. No. 196 at 12.) Plaintiff also argues that Defendant misstates Taiwanese law: "Mr. Chang's signature, by itself, would have sufficed under Taiwan law." (*Id.* n.8.)

---

[3] Defendant also argues that the assignment's reference to the non-existent Force-MOS Technology Corp. (KY) cannot refer to Force MOS Technology Co., Ltd. (Cayman Islands) because the laws of the U.S. and Taiwan "require the company to register the additional trade names under which it operates." (Dkt. No. 166 at 5–6.) However, as Plaintiff correctly states, U.S. and Taiwanese law do not appear to apply to Force MOS Technology Co., Ltd. (Cayman Islands) because this entity is incorporated in the Cayman Islands—not the U.S. or Taiwan.

7

It is undisputed that Mr. Chang signed the 2009 Patent Assignment Agreement as one of Plaintiff's "Supervisors." (Dkt. No. 153-3 at PageID #: 6013.) Defendant also does not dispute that at that time, Plaintiff's only other "Supervisor" was Mr. Lin. (Dkt. No. 231 at 5.) Mr. Lin states in his declaration that he "was aware of and agreed to the signing of the Patent Assignment Agreement and Authorization Agreement between Force MOS Taiwan and Force MOS Cayman." (Dkt. No. 248-3 at 1.)

While Mr. Lin's declaration, signed approximately 15 years after the 2009 Patent Assignment Agreement, might be subject to credibility concerns, Defendant has failed to present any *evidence* that undermines Mr. Lin's statements which were made under penalty of perjury. Looking to the record before the Court, it does not appear that Defendant deposed—or even attempted to depose—Mr. Lin. Moreover, neither Party has listed Mr. Lin on their trial witness lists. (Dkt. Nos. 307-1, 307-2.) Under these facts, Defendant cannot reasonably challenge (and does not apparently care to challenge) the veracity of Mr. Lin's sworn statements. The Court gives Mr. Lin's undisputed declaration its due weight and finds that Mr. Chang signed the 2009 Patent Assignment Agreement on behalf of all "Supervisors."[4]

### 3. Plaintiff has Standing to Assert the '409 Patent

While Plaintiff did not expressly seek summary judgment that it has standing to assert the '409 Patent, the Court is tentatively inclined to find under Rule 56(f) that summary judgment of standing to assert the '409 Patent is appropriate in favor of Plaintiff.

---

[4] Since the Court finds that Mr. Lin authorized Mr. Chang to sign the Patent Assignment Agreement on his behalf and the Parties agree that approval of all Supervisors is sufficient to render the 2009 Patent Assignment Agreement effective, the Court need not reach the issue of whether Mr. Chang's signature alone satisfies Taiwanese law.

B.     **Motions *In Limine* (Dkt. Nos. 256, 257)**

During the pretrial conference, the Court carried Defendant's MIL 5 and Plaintiff's MIL 4 in light of the standing dispute. (Dkt. No. 317 at 4–5.) In view of the Court's findings herein as they relate to the '409 Patent, the Court finds that (1) Defendant's MIL 5 seeking to exclude evidence of Hshieh's intent regarding assignment of the '409 Patent should be denied, and (2) Plaintiff's MIL 4 seeking to exclude evidence, testimony, or argument that errors in the May 31, 2024 declaration of Ming-Tao Chung constitute or represent perjury should be granted.

IV.    **CONCLUSION**

For the reasons noted above, the Court finds that Defendant's Standing MSJ (Dkt. No. 166) should be and hereby is **DENIED**. The Court further is tentatively inclined to find, pursuant to Rule 56(f), that on this record, there is no genuine dispute of material fact that Plaintiff has constitutional standing to assert the '409 Patent and enter summary judgment to that effect. Pursuant to Rule 56(f), Defendant may file a response to this Order. Such response shall be due by 3:00 p.m. CT Friday, January 24, 2025. Additionally, such response shall be limited to five (5) pages and shall not be a means to simply reassert arguments earlier made in the Standing MSJ. After considering such response (if any is filed), the Court will determine whether to formally grant summary judgment in Plaintiff's favor as discussed above.

Finally, the Court finds that (1) Defendant's MIL 5 to exclude alleged evidence of Hshieh's intent regarding assignment of the '409 Patent should be and hereby is **DENIED**, and (2) Plaintiff's MIL 4 to exclude evidence, testimony, or argument that errors in the May 31, 2024 declaration of Ming-Tao Chung constitute or represent perjury should be and hereby is **GRANTED**.

**So ORDERED and SIGNED this 22nd day of January, 2025.**

                                              RODNEY GILSTRAP
                                              UNITED STATES DISTRICT JUDGE