UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| FORCE MOS TECHNOLOGY, CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> ASUSTEK COMPUTER, INC., <br><br> Defendant. | Civil Action No. 2:22-cv-00460-JRG |

**ASUSTEK'S OPPOSITION TO FORCE MOS' MOTION FOR
ATTORNEY FEES AND EXPENSES (DKT. NO. 430)**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARDS .................................................................................................. 1

III. ARGUMENT .................................................................................................................. 2

    A. Force MOS Fails to Show an Exceptional Case ................................................ 2

        1. Claim Construction ................................................................................. 3

        2. Fact Discovery ........................................................................................ 4

        3. Alleged Anti-Competitive Retaliation .................................................... 6

        4. Defense of No Direct Infringement ........................................................ 7

        5. Inequitable Conduct Witnesses and Stipulation ..................................... 8

        6. Objections to Demonstrative Exhibits .................................................... 9

        7. Good Faith Belief of Non-Infringement and Invalidity ........................ 11

        8. Inequitable Conduct Theories ............................................................... 13

    B. Force MOS Fails to Show It Is Entitled to Recover Expert or Consultant Fees ................................................................................................ 13

IV. CONCLUSION ............................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
  858 F.3d 1371 (Fed. Cir. 2017) ................................................................................................ 2

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ................................................................................................................. 2

*Humphries v. Sec. of Health & Human Servs.*,
  No. 17-288V, 2021 WL 1733512 (Fed. Cl. Spec. Mstr. Apr. 9, 2021) ..................................... 9

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
  876 F.3d 1372 (Fed. Cir. 2017) ..................................................................................... 9, 12, 14

*Munchkin, Inc. v. Luv n' Care, Ltd.*,
  960 F.3d 1373 (Fed. Cir. 2020) ................................................................................................ 2

*Octane Fitness, LLC v. ICON Health & Fitness, LLC*,
  572 U.S. 545 (2014) .............................................................................................................. 1, 2

*Park-In-Theatres, Inc. v. Perkins*,
  190 F.2d 137 (9th Cir. 1951) .................................................................................................... 2

**Statutes**

28 U.S.C. § 1920 ..................................................................................................................... 14, 15

35 U.S.C. § 285 ............................................................................................................... 1, 8, 14, 15

I.  **INTRODUCTION**

Plaintiff Force MOS Technology, Co., Ltd. ("Force MOS") has failed to prove this case is "exceptional" within the meaning of 35 U.S.C. § 285. Force MOS presents a cobbled-together list of grievances, but its complaints amount to nothing more than the back-and-forth of a typical patent infringement litigation. Force MOS seems willfully blind to its own conduct and how that conduct led to some of the very grievances Force MOS now airs with the Court. For example, Force MOS ignores that many of its grievances stemmed from joint stipulations to which Force MOS voluntarily agreed. In other cases, Force MOS ignores decisions by the Court in favor of the ASUSTeK conduct that Force MOS now contends was egregious. Throughout its motion, Force MOS mischaracterizes events in a blatant effort to twist the facts and make ASUSTeK look like the bad guy. The common thread is that Force MOS fails to identify any egregious conduct that would support finding that this case is exceptional.

In this response, ASUSTeK addresses each of Force MOS' contentions in turn. ASUSTeK respectfully submits that upon close inspection, the Court should conclude that this case is not exceptional and that there is no basis to award fees that Force MOS spent on its attorneys, experts, or consultants.

II.  **LEGAL STANDARDS**

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court has construed "exceptional" in this context to mean "uncommon," "rare," or "not ordinary." *Octane Fitness, LLC v. ICON Health & Fitness, LLC*, 572 U.S. 545, 553 (2014). An "exceptional case" is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554.

Fee awards under the Patent Act are an exception to the American Rule. *Id.* at 557. Fee awards are not meant to be "a penalty for failure to win a patent infringement suit." *Id.* at 548 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). They should be selectively imposed "to prevent a party from suffering a 'gross injustice,'" *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020) (quoting *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017)), and should be calibrated to "deter" unreasonable litigation. *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)) (cleaned up).

### III.    ARGUMENT

#### A.    Force MOS Fails to Show an Exceptional Case

Force MOS identifies eight categories of conduct that it contends support a finding that this case is exceptional. Despite Force MOS' assertions, some of these categories involved disputes that the parties properly resolved by stipulation to conserve judicial resources. These included the disputes involving claim construction (category 1), fact discovery (category 2), and the inequitable conduct experts (category 5). Other categories resulted in the Court ruling in ASUSTeK's favor. These included the disputes involving ASUSTeK's defense of no direct infringement (category 4), ASUSTeK's objections to Force MOS' demonstrative exhibits (category 6), and the inequitable conduct theories that ASUSTeK presented at the bench trial (category 8). For the remaining categories, including ASUSTeK's alleged anti-competitive retribution (category 3) and ASUSTeK's good faith belief in both non-infringement and invalidity (category 7), Force MOS simply mischaracterizes the record. As explained in more detail below, *none* of these categories involved egregious conduct or otherwise supports a finding that this was an exceptional case.

### 1. Claim Construction

Force MOS alleges a variety of purported misconduct in connection with the exchange and negotiation of disputed claim terms for construction. Dkt. No. 430 ("Mot.") at 2-4. Much of the alleged claim construction conduct that Force MOS cites was the subject of two prior motions that Force MOS filed on March 15, 2024. Dkt. Nos. 62, 63. In one motion, Force MOS moved to strike part of ASUSTeK's responsive claim construction brief. Dkt. No. 62. In the other motion, Force MOS sought attorney fees and costs based on alleged misconduct directed to discovery and claim construction. Dkt. No. 63. ASUSTeK responded to both motions in detail and invites the Court to review the Background sections of ASUSTeK's response briefs as particularly relevant to the present dispute. Dkt. No. 66 at 2-7; Dkt. No. 67 at 4-6. The Court ultimately had no occasion to rule on Force MOS' motions because the parties reached *joint resolution* of those disputes and two others. On May 4, 2024, the parties jointly moved to withdraw all four disputes from the Court's docket. Dkt. No. 94. Force MOS now seeks to revisit those issues as alleged evidence that this case is exceptional. It is too late. The parties negotiated and reached a compromise, as the Court encourages parties to do, and Force MOS cannot now erase that compromise to point its finger once again at ASUSTeK. *See id.*

As for Force MOS' citations to the Court's Claim Construction Order, the Court ruled in favor of Force MOS on some issues and in favor of ASUSTeK on others. Dkt. No. 132. Throughout the Order, the Court criticized the positions it rejected, including some of Force MOS' positions. *See, e.g.*, Dkt. No. 132 at 21 (rejecting Plaintiff's application of case precedent), 22 ("Plaintiff fails to consider the surrounding claim language"). The fact that a court criticizes the arguments of one party or another in deciding claim construction disputes does not make a case exceptional—to the contrary, it is the norm. Further, the Court noted in its Claim Construction Order that it had *denied* Force MOS' then-pending motion to strike part of ASUSTeK's claim

3

construction briefing—one of the same issues that Force MOS now seeks to relitigate in support of the present motion. Dkt. No. 132 at 47 n.3; *see also* Dkt. No. 75 (minute entry noting denial of motion to strike).

### 2. Fact Discovery

Force MOS alleges that ASUSTeK withheld information concerning the accused MOSFETs during fact discovery. Mot. at 4-7. The alleged fact discovery misconduct that Force MOS now cites was also part of the larger compromise that the parties reached on May 4, 2024. In addition to the claim construction dispute, Force MOS directed its prior motion for attorney fees and costs in part to the same discovery issues Force MOS now raises again in the present motion. Dkt. No. 63 at 3-4. Again, the parties resolved that dispute and *jointly* moved to withdraw Force MOS' motions. Dkt. No. 94. Force MOS also now cites a motion to compel that it previously filed. Dkt. No. 61. That too was resolved as part of the parties' May 4, 2025 joint motion to withdraw. Dkt. No. 94.

The crux of Force MOS' argument regarding alleged discovery misconduct is that ASUSTeK allegedly withheld key discovery purportedly in its possession regarding the structure of the accused MOSFETs. Force MOS knows this not to be true. As a former supplier of MOSFETs to ASUSTeK, Force MOS knew that ASUSTeK did not fabricate its own MOSFETs. Force MOS also knew that MOSFET suppliers do not typically provide customers with documentation of the structural details of their MOSFETs. Thus, Force MOS must have known from the beginning that it would need to seek such structural details from the suppliers of the accused MOSFETs. Yet, for more than a year after filing this lawsuit, Force MOS took no action to seek such discovery from the suppliers of the accused MOSFETs. *See* Dkt. No. 66 at 3, Ojemen Decl., ¶ 6. Indeed, Force MOS served no discovery requests *at all* for more than a year after filing its complaint. *See* Dkt. No. 67 at 3, Ojemen Decl., ¶ 8.

4

Having failed to timely seek the discovery it required, Force MOS now blames ASUSTeK. For example, Force MOS incorrectly asserts that ASUSTeK was "under indemnifier control," offering no evidence to support this false assertion. Dkt. No. 430 ("Mot.") at 4. Force MOS also challenges ASUSTeK's consistent, repeated, and truthful position that ASUSTeK does not track exactly which MOSFETs are contained in a given product. *Id.* Yet the sworn testimony of ASUSTeK's witnesses at trial demonstrated both that this is true *and* why it is true: because ASUSTeK qualifies multiple components for each slot and defers to its contract manufacturers to select among the qualified components based on pricing and availability at the time of manufacturing. *See* Tr. at 612:3-21 (Fu), 613:10 – 614:22 (Fu), 727:23 – 729:13 (Hung). The deposition designation testimony that Force MOS cites in its motion does not suggest otherwise. *See* Tr. at 257:25 – 259:7 (Tsao).

Force MOS further complains that it ran out of time to pursue third-party discovery from Panjit, one of the MOSFET suppliers (Mot. at 5 n.2), but again, this was the product of Force MOS' own delay. Force MOS knew even before filing the complaint in this case that Panjit supplied at least some of the accused MOSFETs. *See, e.g.*, Tr. at 621:15 – 622:7 (Fu); JX-54 (May 2022 demand letter sent to Inergy, Panjit's MOSFET fabricator). Yet Force MOS waited *16 months* before seeking discovery from Panjit or any of the other MOSFET suppliers. Force MOS filed its complaint in November 2022 (Dkt. No. 1) and waited until March 2024 to issue letters rogatory (Dkt. Nos. 45-49, 52-56). By that time, there were only two months left before fact discovery would close in May 2024. Dkt. No. 35, Amended Docket Control Order, at 4. It is not reasonable to expect that international discovery can be completed in such a short time, and Force MOS has only itself to blame for the delay. *See* Dkt. No. 67 at 3, Ojemen Decl., ¶ 8 (noting that Force MOS sought no discovery at all for more than a year after filing its complaint).

5

Finally, Force MOS ignores that at least one of the MOSFET suppliers was willing to provide Force MOS with discovery, but Force MOS declined. *See* Dkt. No. 200 at 4 n.1, Ex. D, Ex. E. This is the very same supplier that Force MOS alleges to have dodged discovery and against whom Force MOS allegedly ran out of time to enforce its subpoena. *See* Mot. at 5 n.2. Yet Force MOS was *invited* to take that discovery *during the fact discovery period* and declined to do so. *See* Dkt. No. 200 at 4 n.1, Ex. D, Ex. E. Again, Force MOS has only itself to blame.

### 3. Alleged Anti-Competitive Retaliation

In its present motion and throughout the jury trial, Force MOS has repeatedly and falsely alleged that ASUSTeK sought to impose an industry-wide "ban" on the use of Force MOS components. *See* Mot. at 7; Tr. at 141:10-12 (opening statement), 201:10-14 (R. Chung). This is not true. ASUSTeK conducted an assessment of whether to stop using Force MOS MOSFETs *in its own products*, including in the batteries supplied by other parties for use in ASUSTeK's products. Tr. at 256:7 – 259:2 (Tsao). As Force MOS concedes, ASUSTeK ultimately did not follow through with that assessment, so no "ban" of *any sort* was ultimately imposed. *Id.*; Mot. at 7. But Force MOS mischaracterizes Mr. Tsao's testimony to suggest that ASUSTeK sought to ban the use of Force MOS MOSFETs in other companies' products. Mot. at 7 (citing Tr. at 260:1-18). On the contrary, Mr. Tsao explained in response to the very next question that the assessment was limited to evaluating whether it would be possible to stop using Force MOS MOSFETs "in the battery packs *of ASUS*." Tr. at 260:19-25 (emphasis added). It is natural for a company that has been sued for patent infringement by one of its suppliers to consider ceasing further use of that supplier's products. That is all this was, notwithstanding Force MOS' unsupported assertions to the contrary.

6

### 4. Defense of No Direct Infringement

Force MOS asserts that ASUSTeK engaged in a "last-minute defense shift" with respect to its defense of no direct infringement. Mot. at 8-9. At trial, ASUSTeK argued that there can be no direct infringement because all U.S. sales and marketing are conducted by a different party—ASUSTeK Computer International ("ACI")—and not by Defendant ASUSTeK. Force MOS now selectively cites the Court's comments from the pretrial conference concerning the timing of this defense as alleged evidence of misconduct. Mot. at 8 (citing Dkt. No. 315 at 54:17-19). Force MOS ignores that the Court later permitted Force MOS to file a motion for summary judgment on ASUSTeK's defense of no direct infringement—and that the Court ultimately *denied* Force MOS' motion based on Force MOS' own untimeliness. Dkt. No. 344 at 1-2; Dkt. No. 348 at 1.

In its motion for summary judgment, Force MOS made the same arguments it now recycles here, asserting that ASUSTeK was unduly dilatory in asserting its defense. Dkt. No. 346 at 5, 8-9. In denying Force MOS' motion, the Court criticized ASUSTeK's timing but noted that "Plaintiff's hands are similarly unclean." Dkt. No. 348 at 2. As the Court explained, "[o]nce it learned of this defense, Plaintiff chose to lay behind the log rather than expressly assert an alter ego theory of liability." *Id.* The Court went on to detail the parties' positions on this issue throughout the process of preparing the joint pretrial order. *Id.* at 2-4. Balancing the dilatory conduct of both parties, the Court ultimately permitted ASUSTeK to proceed with its defense of no direct infringement, explaining:

> Here, Plaintiff failed to timely and adequately reveal its alter ego theory in this case. After learning of Defendant's new-found no direct infringement defense, Plaintiff had the opportunity to plead and pursue an alter ego theory. Instead, Plaintiff decided to wait until filing a response to Defendant's motion for summary judgment of no direct infringement to raise its alter ego theory. *Plaintiff's delay is unjustifiably untimely*.

7

*Id.* at 5 (emphasis added) (internal citation and footnote omitted).  Force MOS should not now be permitted to ignore its own dilatory conduct while citing ASUSTeK's delay as alleged evidence that this case is exceptional.

### 5. Inequitable Conduct Witnesses and Stipulation

Force MOS alleges that ASUSTeK wasted resources by improperly disclosing an expert witness on inequitable conduct and then abandoning that witness and some of its inequitable conduct theories.  Mot. at 9-10.  Once again, Force MOS relies on a dispute that the parties resolved *by agreed stipulation* as evidence of alleged misconduct.  As Force MOS concedes, "after Plaintiff notified Defendant of its intent to move to strike the improper opinions, Defendant agree[d] to a stipulation withdrawing both expert reports from the case."  Mot. at 9.  This is precisely the type of compromise that the Court should encourage parties to pursue.

Indeed, the case Force MOS cites actually counsels *against* finding this case to be exceptional.  In *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, the Federal Circuit affirmed an award of attorney fees under § 285 where the plaintiff wastefully pursued its infringement claim even after an intervening change in the law made clear that the plaintiff's claim was untenable.  876 F.3d 1372, 1377-78 (Fed. Cir. 2017).  By continuing to pursue its untenable claim, the plaintiff forced the court to rule on the issue and thereby wasted the resources of both the parties and the court.  *Id.*  That is the opposite of what ASUSTeK did here.  After Force MOS notified ASUSTeK of its planned motion to strike its expert report on inequitable conduct, ASUSTeK reconsidered its position and decided to withdraw the report in exchange for Force MOS' decision to withdraw its own responsive report.

Similarly, ASUSTeK withdrew certain of its inequitable conduct theories after Force MOS identified vulnerabilities in those theories.  This type of compromise and case-narrowing *conserves* judicial resources.  None of the cases Force MOS cites suggests otherwise.  Indeed, one of the

8

decisions Force MOS cites addresses the "eleventh-hour abandonment of the claim" as a "practice that should not be rewarded." *Humphries v. Sec. of Health & Human Servs.*, No. 17-288V, 2021 WL 1733512, at *3 (Fed. Cl. Spec. Mstr. Apr. 9, 2021). ASUSTeK did not abandon its claims at the eleventh hour. ASUSTeK withdrew its claims immediately after Force MOS identified their vulnerabilities. By contrast, it was Force MOS that literally abandoned claims at the eleventh hour—withdrawing an entire patent on the evening before trial was to begin. Tr. at 107:17 – 108:13. In doing so, Force MOS violated the Court's express order that the patent owner must narrow its infringement claims at least 10 days before trial. *See* Dkt. No. 292, Second Amended Docket Control Order, at 1 ("Plaintiff to disclose final election of Asserted Claims" 10 days before Jury Selection). By contrast, at no point in this case has ASUSTeK abandoned any claim at the eleventh hour.

### 6. Objections to Demonstrative Exhibits

Force MOS asserts that ASUSTeK somehow improperly objected to the multitude of demonstrative exhibits Force MOS tried to present at trial. Mot. at 10-11. Here, Force MOS attempts to blame ASUSTeK for its own evidentiary failings. It is true that ASUSTeK objected to many of Force MOS' SEM, EDS, and SCM images at the pretrial conference. Dkt. No. 316 at 4:20 – 14:9. The objection was well-founded. Force MOS produced thousands of such images in the case, but Dr. Neikirk addressed only a tiny fraction of those images in his expert report. ASUSTeK properly objected to the admission of any images that Dr. Neikirk did not discuss in his report, and the Court *sustained* ASUSTeK's objection. *Id.* Force MOS may have taken that ruling as sour grapes, but there was nothing improper in ASUSTeK's objection. Force MOS has only itself to blame for failing to properly disclose and lay a foundation for the excluded exhibits. Indeed, the Court had to suspend the pretrial conference and continue it on the next day so that

9

Force MOS could try to get its proposed exhibits in order and in compliance with the Court's limitations on the number of exhibits. Dkt. No. 315 at 104:7 – 116:3.

As Force MOS correctly notes, the Court stated during the pretrial conference that Dr. Neikirk would be able to use the excluded images as demonstrative exhibits. Mot. at 11 (citing Dkt. No. 316 at 11:6-19). But Force MOS ignores the subsequent exchange on this topic. Counsel for ASUSTeK stated plainly that ASUSTeK would object to Dr. Neikirk's use of any images that he did not discuss in his report—even if used only as demonstrative exhibits—on the basis that it would exceed the scope of his disclosed opinions. Dkt. No. 316 at 14:11 – 15:5. The Court acknowledged ASUSTeK's position and noted that it presented no problem:

> THE COURT: That's a question for another day, and to the extent you've telegraphed your punch to the Plaintiff, they are on notice that that is what you intend to do, so I have no problem.

Dkt. No. 316 at 14:24 – 15:2.

Force MOS now breathlessly cites a privileged email [1] Indeed. That is precisely what ASUSTeK's counsel told both the Court and Force MOS in open court during the pretrial conference. Nor is there anything wrong with objecting to opinions that go beyond what an expert disclosed during discovery. The Court regularly enforces such limitations on expert testimony at trial.

---

[1] Unbeknownst to ASUSTeK, one of its suppliers filed the email in support of Taiwanese litigation against Force MOS and to which ASUSTeK is not a party. ASUSTeK understands that Taiwanese law prohibits Force MOS' use of the email outside of the Taiwanese litigation. However, so long as the email remains sealed on the Court's docket, ASUSTeK will not move to strike it or otherwise ask the Court to interpret the applicable Taiwanese law.

Nor should it be a surprise that ASUSTeK made good on its promise and objected to Dr. Neikirk's use of images—even if used only as demonstrative exhibits—on which he did not opine in his expert report. ASUSTeK consistently maintained this position throughout the pretrial conference and the trial. Force MOS now blames ASUSTeK for the Court's decision to impose limits of 20 demonstrative exhibits per witness. Mot. at 11. But the problem was not ASUSTeK's objections. The problem was Force MOS' disclosure of literally hundreds of demonstrative exhibits for use with Dr. Neikirk's testimony, the vast majority of which he had not discussed in his expert report.

Force MOS complains that the demonstrative objection procedures "required near-constant revisions to Plaintiff's demonstratives and substantial expenditures by consultants, as well as extensive hours from numerous attorneys mapping those demonstratives to the opinions disclosed in Plaintiff's expert's report." Mot. at 11. This is all work that should be done by any party *before* trial. That Force MOS was unprepared to explain how each of its demonstrative exhibits fell within the scope of Dr. Neikirk's disclosed opinions indicates a failure in Force MOS' trial preparation, not misconduct on ASUSTeK's part. As for ASUSTeK's strategic decision not to interrupt Dr. Neikirk's testimony with repeated scope objections, the Court had already indicated in chambers that it would exercise its discretion to permit the remaining demonstrative exhibits, and ASUSTeK decided any further objections would be futile. Once again, this is the *opposite* of the "wasteful litigation" that Force MOS cites in the Federal Circuit's *Inventor Holdings* decision. *See* Mot. at 11 (citing *Inventor Holdings*, 876 F.3d at 1377-78).

### 7. Good Faith Belief of Non-Infringement and Invalidity

Force MOS incorrectly alleges that ASUSTeK lacked a good faith belief in its invalidity and non-infringement defenses, making two separate assertions. Mot. at 11-13. Both are unfounded.

11

*First*, in preparation for trial, and recognizing the limited time each side would have to present its case to the jury, ASUSTeK elected not to present its invalidity case on the '634 patent. Instead, ten days before trial and in compliance with the Court's deadline, ASUSTeK timely notified Force MOS of its decision to present an invalidity case only as to the '409 patent. Force MOS now criticizes ASUSTeK's decision not to argue invalidity of the '634 patent at trial. Mot. at 12. As with so many of its arguments in this motion, Force MOS would have the Court punish ASUSTeK for streamlining its case and *conserving* judicial resources. Force MOS cites no authority for doing so, nor is ASUSTeK aware of any.

*Second*, Force MOS incorrectly asserts that ASUSTeK "failed to present any evidence at trial that it conducted a reasonable investigation into whether the MOSFETs infringed either of the asserted patents." Mot. at 12. Force MOS' assertion strains credulity. ASUSTeK's corporate representative testified that upon learning of Force MOS' infringement allegations ASUSTeK immediately contacted Panjit, the supplier of the accused MOSFET, for more information. Tr. at 622:1-3 (Fu). Panjit assured ASUSTeK that there was no infringement and provided no less than *five* formal non-infringement opinions. Tr. at 622:4 – 625:10; JX-42 (28); JX-57; JX-40; JX-47; JX-49. Panjit also provided a warranty of non-infringement, ensuring that it had skin in the game. *Id.* at 625:11-24. Under these circumstances, ASUSTeK had no reason to question Panjit's repeated assurances and warranty, and ASUSTeK reasonably believed that there was no infringement. *Id.* at 625:25 – 626:5. ASUSTeK did not do any further analysis of its own because ASUSTeK has no expertise in MOSFETs. Instead, ASUSTeK reasonably relied on the MOSFET supplier Panjit for that expertise. *Id.* at 626:6-8.

In light of this extensive evidence, Force MOS' assertion that ASUSTeK effectively stuck its head in the sand makes no sense. ASUSTeK relied on the experts—the suppliers of the accused

12

MOSFETs—and reasonably believed there was no infringement based on their assurances. If ASUSTeK had believed otherwise, it could have simply removed the infringing MOSFETs from its products. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Nothing in Force MOS' brief, nor in the evidence of record, indicates that ASUSTeK lacked a good faith belief in its non-infringement or invalidity arguments.

### 8. Inequitable Conduct Theories

Force MOS criticizes ASUSTeK for presenting allegedly untimely inequitable conduct theories. Mot. at 13-14. Once again, Force MOS tells only part of the story. Force MOS ignores that the Court rejected these same arguments when it denied Force MOS' motion to strike as untimely the same inequitable conduct theories that Force MOS now challenges again here. Dkt. No. 390 (Motion to Strike); Dkt. No. 398 (Order Denying Motion to Strike). The Court did ultimately find that ASUSTeK had waived certain inequitable conduct theories in its Findings of Fact and Conclusions of Law. *See* Dkt. No. 420 at FF53, FF84, FF91, FF109, FF188. ASUSTeK respectfully submits that these were not actually new theories. But for purposes of the present motion, the point is that the Court initially denied Force MOS' motion to strike those theories. At a minimum, the Court's denial of Force MOS' motion to strike indicates that ASUSTeK's positions were not egregious and therefore cannot form the basis for an exceptional case.

### B. Force MOS Fails to Show It Is Entitled to Recover Expert or Consultant Fees

Beyond attorney fees, Force MOS seeks to recover costs in the form of expert and consultant fees. Force MOS initially proposed including these two costs in its Bill of Costs. ASUSTeK objected that neither expert fees nor consultant fees are recoverable costs under 28 U.S.C. § 1920, and Force MOS withdrew these two line items from the Notice of Undisputed Bill of Costs it submitted to the Court. *See* Dkt. No. 427. Force MOS now seeks a second bite at the

13

apple, attempting to shoehorn these costs into its motion for attorney fees, relying on the Court's inherent authority.

With respect to expert fees, Force MOS makes the same argument addressed above in Section III.A.5, which is that ASUSTeK withdrew the expert report of Dr. Stoll after Force MOS indicated it would move to strike that report. In support of its request for attorney fees related to this topic, Force MOS cites *Inventor Holdings*, in which the Federal Circuit affirmed an award of attorney fees under § 285 where the plaintiff wastefully pursued its infringement claim even after an intervening change in the law made clear that the plaintiff's claim was untenable. Mot. at 9 (citing *Inventor Holdings*, 876 F.3d at 1377-78). As ASUSTeK argued above in Section III.A.5, *Inventor Holdings* actually undermines Force MOS' position in this case. Rather than continuing to present Mr. Stoll's report after Force MOS identified its vulnerabilities, ASUSTeK did the right thing and withdrew the report, thus *conserving* judicial resources, not wasting them. The same reasoning applies here, and ASUSTeK respectfully submits that the Court should deny Force MOS' request for expert fees.

As to consultant fees, Force MOS' argument essentially mirrors its § 285 argument concerning ASUSTeK's objections to Dr. Neikirk's demonstrative exhibits. As explained above in Section III.A.6, those objections were entirely proper and in many cases were sustained by the Court or led Force MOS to withdraw the demonstrative exhibits. ASUSTeK's objections certainly provide no basis for recovering consultant fees that are otherwise not recoverable under § 1920.

## IV.   CONCLUSION

For all of the reasons presented above, ASUSTeK respectfully submits that the Court should find that this case is not exceptional and should deny Force MOS' motion to recover the fees of its attorneys, experts and consultants.

| | |
|---|---|
| Dated: August 6, 2025 | Respectfully submitted,<br><br>/s/ *Charles M. McMahon*<br>Charles M. McMahon<br>Kal K. Shah<br>Thomas M. DaMario<br>Kathleen M. Lynch<br>BENESCH FRIEDLANDER<br>  COPLAN & ARONOFF LLP<br>71 South Wacker Dr., Suite 1600<br>Chicago, IL 60606<br>Tel: (312) 212-4949<br>Fax: (312) 767-9192<br>cmcmahon@beneschlaw.com<br>kshah@beneschlaw.com<br>tdamario@beneschlaw.com<br>klynch@beneschlaw.com<br><br>Ziyong (Sean) Li<br>BENESCH FRIEDLANDER<br>  COPLAN & ARONOFF LLP<br>100 Pine Street, Suite 3100<br>San Francisco, CA 94111<br>Tel: (628) 600-2239<br>Fax: (628) 221-5828<br>sli@beneschlaw.com<br><br>Melissa R. Smith<br>State Bar No. 24001351<br>GILLAM & SMITH, LLP<br>303 South Washington Avenue<br>Marshall, Texas 75670<br>Tel: (903) 934-8450<br>Fax: (903) 934-9257<br>melissa@gillamsmithlaw.com<br><br>James Travis Underwood<br>Texas Bar No. 24102587<br>GILLAM & SMITH, LLP<br>102 N. College, Suite 800<br>Tyler, Texas 75702<br>Tel: (903) 934-8450<br>Fax: (903) 934-9257<br>travis@gillamsmithlaw.com<br><br>*Counsel for ASUSTeK Computer, Inc.* |

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August 2025, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, and service has been effectuated to all counsel of record via email.

*/s/ Charles M. McMahon*
Charles M. McMahon

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), I certify that this motion is being filed under seal pursuant to the Provisions of the Protective Order entered in this matter. (Dkt. 28).

*/s/ Charles M. McMahon*
Charles M. McMahon
