FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FORCE MOS TECHNOLOGY, CO., LTD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-00460-JRG |
| | ) | |
| ASUSTEK COMPUTER, INC. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RULE 50(B) MOTION FOR
JUDGMENT AS A MATTER OF LAW OF NO DIRECT INFRINGMENT**

**FILED UNDER SEAL**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT .................................................................................................................. 2

    A.    Substantial Evidence Supports the Jury's Conclusion That Defendant Performs Acts of Direct Infringement in the United States .................................. 2

    B.    Substantial Evidence Supports the Jury's Conclusion That the Accused MOSFETs Include a "Lateral Contact Layer" ....................................................... 5

        1.    Substantial Evidence Supports the Conclusion that Each of the Accused MOSFETs Have a Lateral Contact Layer with P* Doping ........................ 6

        2.    ASUS's Practicing the Prior Art Defense is Legally Invalid, and There is No Inconsistency in Dr. Neikirk's Theories ............................................... 9

        3.    Substantial Evidence Supports Infringement by the PJX138K ............... 11

    C.    The Non-Final Administrative Finding in the PTAB Is Not a Basis for Overturning the Judgment of Infringement as to the '409 Patent ........................ 14

III.    CONCLUSION ............................................................................................................. 15

FILED UNDER SEAL

## TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks v. Verizon Communications*,
  694 F. 3d 1312 (Fed. Cir. 2012) ....................................................... 14

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
  49 F.3d 1575 (Fed. Cir. 1995) ............................................................. 9

*Bellows v. Amoco Oil Co.*,
  118 F. 3d 268 (5th Cir. 1997) .............................................................. 6

*Commil USA, LLC v. Cisco Systems, Inc.*,
  575 U.S. 632 (2015)........................................................................... 14

*Fonar Corp. v. General Elec. Co.*,
  107 F.3d 1543 (Fed.Cir.1997) ........................................................... 14

*Gordon v. United States*,
  117 U.S. 697, 1864 WL 11666 (1865) ............................................... 15

*In re Lockwood*,
  50 F. 3d 966 (Fed. Cir. 1995) ............................................................ 14

*Johnson v. Towsley*,
  13 Wall. 72, 20 L.Ed. 485 (1871) ...................................................... 15

*Motorola, Inc. v. Interdigital Technology Corp.*,
  121 F. 3d 1461 (Fed. Cir. 1997) ........................................................ 13

*Realtime Data LLC v. EchoStar Corp.*,
  No. 6:17-CV-00084-JDL, 2018 WL 6271807 (E.D. Tex. Nov. 29, 2018)................................. 9

*SEC v. Jarkesy*,
  144 S. Ct. 2117 (2024)........................................................................ 14

*SSL Services, LLC v. Citrix Systems, Inc.*,
  769 F. 3d 1073 (Fed. Cir. 2014) ........................................................ 13

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
  279 F.3d 1357 (Fed. Cir. 2002) ........................................................... 9

*TMI, Inc. v. Maxwell*,
  368 F.3d 433 (5th Cir. 2004) ............................................................... 2

*United States ex rel. Harman v. Trinity Industries, Inc.*,
  166 F. Supp. 3d 737 (E.D. Tex. 2015)........................................... 10, 14

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*,
  522 F.3d 1348 (Fed. Cir. 2008) ........................................................... 9

**Statutes**

15 U.S.C. § 1141(5) ............................................................................... 3

**FILED UNDER SEAL**

35 U.S.C. § 141(c) ................................................................................................. 16

35 U.S.C. § 271(a) ................................................................................................. 6

35 U.S.C. § 318(b) ................................................................................................. 16

**Rules**

Fed. R. Evid. 703 ................................................................................................... 13

**Regulations**

37 CFR § 42.75(d)(1) ............................................................................................. 15

**FILED UNDER SEAL**

## I.    INTRODUCTION

Defendant's motion for judgment as a matter of law as to direct infringement should be denied.  Defendant presents three arguments, none of which have merit.  First, Defendant argues that there is no evidence that the named Defendant in this case—Asustek Computer, Inc. ("ASUS")—performed acts of direct infringement in the United States.  However, this is nothing more than a rehash of arguments that this Court already found to be without merit at summary judgment.  Indeed, the evidence at trial showed that Defendant owns U.S. trademarks because it sells its products in the United States, including the accused representative products.  And the evidence showed that Defendant operates the asus.com website to offer for sale and sell infringing products to U.S. customers.  In particular, a "terms of use" webpage for the U.S. portion of that website expressly states that Asustek Computer, Inc., is providing products.

Second, Defendant argues that there is insufficient evidence that the accused products infringe the "lateral contact layer" limitation of the '634 Patent.  In particular, Defendant argues that Dr. Neikirk's theory—that ion implantation into tapered sidewalls creates P* doped lateral contact layers in the accused products—contradicts the Court's materiality findings regarding a piece of prior art from the inequitable conduct bench trial.  This argument is not only a procedurally improper and legally meritless "practicing the prior art defense"—but it also ignores Dr. Neikirk's testimony clearly explaining why there is no inconsistency as to this issue.  Defendant also argues that there is no admitted exhibit showing tapered sidewalls for the PJX138K, and thus that there is insufficient evidence of a "lateral contact layer."  That is not only legally incorrect—Dr. Neikirk's testimony is substantial evidence even if not based on an admitted exhibit—but it also completely ignores that Defendant itself introduced SEM images showing the tapered sidewalls of the PJX138K.

<u>**FILED UNDER SEAL**</u>

Finally, Defendant argues that the PTAB's issuance of a decision finding claim 1 of the '409 Patent unpatentable nullifies the jury's infringement verdict for the '409 Patent. But invalidity is distinct from infringement, and that decision is not final because it is under review by the Director of the PTO. Indeed, Defendant acknowledges that IPR proceedings are not final until appeals have been exhausted. Thus, this argument provides no basis to disturb the jury's verdict.

## II.    ARGUMENT

### A.    Substantial Evidence Supports the Jury's Conclusion That Defendant Performs Acts of Direct Infringement in the United States

ASUS's first argument simply rehashes arguments that the Court already rejected in connection with ASUS's motion for summary judgment of no direct infringement. In opposing that motion, Force MOS argued, *inter alia*, that ASUS can only own its various U.S. trademarks if it is using its marks in the ordinary course of trade in the United States, such as selling products or offering to sell products. Dkt. 204 at 12 (citing *TMI, Inc. v. Maxwell*, 368 F.3d 433, 437 (5th Cir. 2004)). And, Force MOS noted that the asus.com website was owned by ASUS, that ASUS owned the copyright to the website, that the website's "terms of use" are provided by ASUS, that the website is registered to ASUS, and that expert testimony supported that ASUS sells accused products through its website. *Id.* at 11. The Court subsequently denied ASUS's motion for summary judgment because "ownership of the websites through which U.S. customers purchased accused products, as well as the ownership of the trademarks used to brand certain accused products, raises material questions of fact that preclude the entry of summary judgment." Dkt. 315 (Nov. 25, 2024 PTC. Tr.) at 54:4-10; Dkt. 317 at 2.

That same evidence was presented to the jury. In particular, when presented with ASUS's registered trademarks, ASUS's corporate representative, Mr. Max Fu, confirmed that ASUS owns and uses U.S. trademarks for its products sold in the United States, including accused

**FILED UNDER SEAL**

representative products. Trial Tr. (Vol. 2) at 586:1-588:22; PX-13.002; PX-14.003; PX-14.007. And he confirmed that, as such, ASUS represents to the U.S. Patent and Trademark Office that it engages in commerce in the United States using those trademarks. *Id.* Indeed, Mr. Fu admitted that "because <u>ASUS sells its products in the U.S.</u>, it also has to register trademarks here." *Id.* at 586:1-3 (emphasis added). Despite this, Defendant argues that its trademark statement of use does not imply that ASUS itself is using its trademarks in the United States—suggesting that ASUS merely represented to the PTO that *anyone* is using the mark in commerce. But that is not only unsupported in the record, it is legally erroneous. 15 U.S.C. § 1141(5) (requiring representations that trademark applicant is "entitled to use the mark in commerce" and that "no other person, firm, corporation, or association … has the right to use such mark in commerce"). Notably, although Defendant now asserts that ACI is a licensee under the trademarks (Mot. at 5), it did not attempt to introduce any evidence or testimony at trial that ACI (or any other entity) was licensed.

Moreover, the testimony during trial provided substantial evidence for the jury to conclude that Defendant operates the "asus.com" website to offer to sell and sell the accused products to U.S. customers. In particular, Mr. Fu confirmed that ASUS owns the asus.com website. Trial Tr. (Vol. 2) at 583:15-16. He also testified that ASUS knows that its subsidiary, ACI, imports ASUS's products into the United States, which are sold on the asus.com website. *Id.* at 581:6-14. And he confirmed that the asus.com website includes ASUS's trademarked logo on its "asus.com/us" website where accused products are offered for sale to U.S. customers. *Id.* at 582:13-583:23.

In addition, Dr. Neikirk testified that he examined the asus.com website and its associated "Whois" information, and opined that ASUS specifically designs products for sale in the U.S. *Id.* at 346:18-348:3, 440:13-441:19. Based on that, Dr. Neikirk opined that Defendant offers for sale and sells the Accused Products in the United States via the website. *Id.* Indeed, in its motion,

<u>**FILED UNDER SEAL**</u>

Defendant admits that "U.S. customers may order the accused products on the U.S. [asus.com] Website" and "that ASUSTeK is the registered owner of the website."  Mot. at 4.

Although Mr. Fu, at times, testified that ASUS does not own the U.S. *part* of the asus.com website, and did not itself sell in the U.S., the jury was free to assess Mr. Fu's credibility and discredit his testimony on such points, which were not supported by any documentary evidence. Trial Tr. (Vol. 2) at 583:17-19.[1]  If Defendant has an "eBay" type legal structure for its website— as it now contends—it should have provided documentary evidence of such a structure.

To the contrary, the documentary evidence at trial persuasively showed that Defendant infringes in the U.S. using its website.  On the very same "asus.com/us" webpage that offered to sell an accused product to U.S. customers, the asus.com website includes a copyright notice asserting that Defendant owns the copyright to that webpage.  *Id.* at 584:1-585:11.

**ROG STRIX Z790-F GAMING WIFI II Motherboard**

★★★★★
4.6 (19)

JX-68.333.



*Id.*

---

[1] Defendant did submit documentary evidence that ASUS Computer International is the importer of record for at least some products. Mot. at 1 (citing Trial Tr. (Vol. 2) at 609:5-610:7; DX-22). However, selling and offering to sell are distinct acts of infringement from importation. 35 U.S.C. § 271(a).  Thus, Defendant can still be liable for selling and offering for sale the accused products in the United States even if it is not the importer of such products.

**FILED UNDER SEAL**

©ASUSTeK Computer Inc. All rights reserved.    Terms of Use Notice  |  Privacy Policy

JX-68.338.

Moreover, as shown above, the bottom of that webpage also included a link to a "terms of use" policy.   That policy states that "products and services" are "provided by [Defendant] ASUSTek Computer Inc."  JX-68.388; Trial Tr. (Vol. 2) at 585:13-25.  And those terms—defining "ASUS" as Defendant ASUSTEK Computer Inc.—expressly apply to "any product" "provided under ASUS Brand or any other brand owned by ASUS," i.e. the accused products:

**Terms Of Use Notice**

ALL PRODUCTS AND SERVICES ("SERVICE") PROVIDED BY ASUSTEK COMPUTER INC. ("ASUS") ARE SUBJECT TO THIS TERMS OF USE NOTICE ("NOTICE"). SERVICE MEANS, INCLUDING BUT NOT LIMITED TO, ANY PRODUCT, SERVICE, SERVICE EVENT (DEFINED AS BELOW), SOFTWARE, APPLICATION AND INFORMATION PROVIDED UNDER ASUS BRAND OR ANY OTHER BRAND OWNED BY ASUS. YOU EXPRESSLY ACKNOWLEDGE

JX-68.388 (highlighting added).  The terms of use also state that Defendant ASUS "provide[s]" "purchases of products" via its "E-Commerce" store:

6.  **E-Commerce**
     Any purchases of products and services/support packages provided by ASUS, shall be governed by the terms and conditions of the e-commerce store, please refer to ASUS sales agreements and relevant policies.

JX-68.390 (highlighting added).  Defendant's motion inexplicably ignores the terms of use (Mot. at 4-5), despite their featuring prominently in the summary judgment briefing (Dkt. 204 at 11).

This legal document—provided specifically for the "asus.com/us" website—is compelling evidence that Defendant itself offers for sale and sells infringing products in the United States via its website.  And Defendant cites no evidence—other than Mr. Fu's conclusory, unsupported, and self-serving testimony—to the contrary.  Thus, the jury had a legally sufficient evidentiary basis for finding that Defendant performed acts of direct infringement under 35 U.S.C. § 271(a).

   **B.    Substantial Evidence Supports the Jury's Conclusion That the Accused MOSFETs Include a "Lateral Contact Layer"**

Defendant's motion attempts to isolate various specific pieces of evidence in the record

5

<u>FILED UNDER SEAL</u>

and argue that none of them alone are sufficient to show infringement of a "lateral contact layer." But this is entirely improper.  Rather, JMOL should only be granted if "after considering all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict." *Bellows v. Amoco Oil Co.*, 118 F. 3d 268, 273 (5th Cir. 1997).  Defendant's motion falls far short of that standard— as shown below, the record readily supports the jury's verdict.

> **1.    Substantial Evidence Supports the Conclusion that Each of the Accused  MOSFETs Have a Lateral Contact Layer with P* Doping**

Unlike Defendant, Plaintiff's expert Dr. Neikirk relied on the combination of a number of pieces of evidence to reach his conclusion that each of the accused MOSFETs contains a lateral contact layer with P* doping.  Those included ASUS documents, tear downs of the accused products, testimony of ASUS's witnesses, specification sheets for the MOSFETs, and SEMs and EDS results generated by Microtech.  Trial Tr. Vol. 2 at 327:13-17, 349:9-351:3, 352:17-24, 354:4-355:5, 454:9-13, 557:20-558:10.

Synthesizing this evidence, Dr. Neikirk explained that the "source contact trenches" are "tapered as they go into the body region."  Trial Tr. (Vol. 2) at 411:1-13.  He also noted that the accused products use an ion implantation procedure to introduce additional dopants into the source contact trenches.  *Id.* at 412:17-21; *see also* Trial Tr. (Vol. 3) at 834:9-12.  As a result of the combination of those two factors, Dr. Neikirk opined that the flatter, horizontal bottom of the trenches receives more dopants than the tapered sides, as he illustrated with a demonstrative:

**FILED UNDER SEAL**



PDX-3.9; Trial Tr. (Vol. 2) at 411:20-412:16.  Thus, Dr. Neikirk concluded that:

> [T]he sidewalls receive dopants, but fewer than the bottom. The base region, the body region, establishes the reference for P. So the sidewalls are implanted and their doping concentration is greater than P. But, again, the bottom receives a great deal more doping. That would establish a reference for P+. The requirement for a lateral contact layer is that it be doped between P and P+, otherwise called by the patent P*.

Trial Tr. Vol. 2 at 415:14-416:2; *see also id.* at 412:6-16 ("It's kind of like raining down into the trench.  And just like when it's raining, if you stand up, your sides, your sidewalls, they'll get wet, but they won't get soaked; whereas, if you lay down, when you're horizontal, you'll get soaked.").

Moreover, Dr. Neikirk presented the jury with junction-stained SEM images to explain how his opinions regarding ion implantation into a tapered trench resulted in a P* doped lateral contact layer in the accused products.  Trial Tr. (Vol. 2) at 415:6-416:15, 419:19-420:12, 422:13-423:2, 424:9-425:7, 428:3-429:2, 431:11-432:8, 434:7-435:8.  Additionally, Dr. Neikirk explained that the same opinions applied to each of the accused MOSFETs.  Trial Tr. (Vol. 2) at 360:4-364:20, 419:21-435:23.  Defendant argues that junction-stained SEMs provide no evidence of P*

FILED UNDER SEAL

doping (Mot. at 7), but this mischaracterizes the record. Although Mr. Diep testified that staining could not identify a specific doping concentration, Mr. Diep also testified that he "believe[d]" that "doping concentration" "does matter" with respect to how etchants react with a sample. Trial Tr. (Vol. 2) at 301:5-17. Thus, the SEMs shown to the jury provide further confirmatory evidence of Dr. Neikirk's opinion as to the presence of a P* doped lateral contact layer.

Furthermore, ASUS's technical expert, Dr. Shanfield, was impeached in front of the jury on the same issue—the jury was shown his invalidity expert report stating that "POSITA would therefore have known that a nominally perpendicular implantation angle on a circular, typically dry etched sidewall slope, as shown in Fig. 9G, results in a less doping concentration at the sidewalls of the source contact trench as opposed to the bottom of the trench." Trial Tr. (Vol. 3) at 845:1-16; Dkt. 164-3 (Shanfield Invalidity Report, attached hereto as Ex. A) ¶ 214. And, Dr. Shanfield admitted that "less doping concentration at the sidewalls of the source contact trench as opposed to the bottom of a trench" "could" "result[] in P* doping at the sidewalls." Trial Tr. (Vol. 3) at 846:12-16. Together, all of this evidence, and the reasonable inferences the jury could reach from it, readily supplied substantial evidence that supports the jury's conclusion that the accused products have P* doped lateral contact layers.

Although Defendant repeatedly criticizes Dr. Neikirk for not directly measuring the doping concentration, that is simply a tardy *Daubert* argument. If Defendant were able to show that those in the field would exclusively rely on direct measurements to determine doping concentration, it should have sought to strike Dr. Neikirk's opinions at the time set in the scheduling order for filing *Daubert* motions. Even now, Defendant fails to introduce any evidence that direct measurement is considered mandatory—or even customary—in the field to determine doping concentrations, or that Dr. Neikirk's opinions are unreliable. And Defendant ignores that its own counsel solicited

**FILED UNDER SEAL**

testimony from Dr. Neikirk that he also observed "scanning capacitance microscope" testing of the accused products which allowed him to reach conclusions regarding doping concentration. Trial Tr. (Vol. 2) at 526:18-528:2. In any event, Defendant's dispute with Dr. Neikirk's methodology does not render his testimony inadequate to support the verdict. Such disputes go to the weight of Dr. Neikirk's testimony, and the jury was empowered to find his opinions credible.

### 2.    ASUS's Practicing the Prior Art Defense is Legally Invalid, and There is No Inconsistency in Dr. Neikirk's Theories

Defendant's primary argument is that the accused MOSFETs cannot infringe because a piece of prior art—the Hsieh '384 Patent—teaches ion implantation into a tapered trench, and the Court found Hsieh '384 not to teach P* doping in its inequitable conduct findings of fact. Mot. at 9-11; *id.* at 2. However, that argument is nothing more than a "practicing the prior art" defense, which the Federal Circuit has repeatedly held to be legally meritless. *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002) ("there is no 'practicing the prior art' defense to literal infringement"); *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008); *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995).

In particular, "an accused infringer may not, 'skirt evidentiary hurdles and conflate the infringement and invalidity inquiries . . . [to] forsake[] any comparison between the asserted claims and the accused product, relying instead upon purported similarities between the accused product and the prior art.'" *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 6271807, at *4 (E.D. Tex. Nov. 29, 2018) (citations omitted). That is exactly what Defendant's argument does—it points to similarities in Hsieh '384 and the accused products to attempt to immunize itself from infringement. Mot. at 2 ("Dr. Neikirk's [infringement] testimony boiled down to two points … the inventor's own prior art reference disclosed exactly these same two

**FILED UNDER SEAL**

points"). Moreover, the evidence regarding Hsieh '384 submitted during the inequitable conduct bench trial—and the Court's factual findings applying inequitable conduct's clear and convincing standard to that evidence—are entirely irrelevant to whether substantial evidence supports the *jury's* verdict of infringement under the preponderance of the evidence standard. *See United States ex rel. Harman v. Trinity Industries, Inc.*, 166 F. Supp. 3d 737, 761 (E.D. Tex. 2015) (materials "outside the record of the [jury] trial in this case" "cannot constitute any part of this Court's analysis under Federal Rule of Civil Procedure 50(b).") (Gilstrap, J.), *rev'd on other grounds* 872 F.3d 645 (5th Cir. 2017).[2]

Additionally, Defendant's argument is also factually meritless. In particular, at the bench trial, Dr. Neikirk expressly explained the consistency of his materiality and infringement opinions, stating that his opinions were consistent because:

> In my infringement analysis, I wasn't just looking at a figure; I had actual products. I had specifications for those products that gave a variety of specific numbers for them; threshold voltages just as an example. I had cross-sectional SEMs that have been [junction stained]. So I had a great deal of evidence that I could consider in order to try to determine that the sidewalls were less doped--that was easy--but that, in fact, they satisfied the P* requirement that they were not P+.

Bench Trial Tr. at 66:23-67:12; *see also id.* at 82:15-83:18. Defendant never followed up on that point in cross-examination. Nor did Defendant attempt to dispute Dr. Neikirk's explanation that the threshold voltage figures in the specification sheets for the accused products allowed him to confirm that they did not use P+ doping (unlike Hsieh 384, which expressly teaches that the sidewalls are P+ doped). Indeed, Defendant continues to ignore Dr. Neikirk's explanation in its motion. Mot. at 9-11.

---

[2] Defendant also attempts to argue that certain of the findings in the Court's factual findings on inequitable conduct are unsupported. Mot. at 10. If that were correct (which it is not), it should have filed an appropriate motion under Fed. R. Evid. 52(b) at the time required by that rule.

FILED UNDER SEAL

Defendant certainly was free to try to impeach Dr. Neikirk during the jury trial regarding the consistency of his opinions.  And Defendant could have submitted expert reports and expert testimony that ion implantation into tapered sidewalls does not result in a P* doped lateral contact layer.  But Defendant's own tactical missteps do not invalidate the jury's verdict.

### 3.    Substantial Evidence Supports Infringement by the PJX138K

ASUS next argues that there is not substantial evidence that the PJX138K has a "lateral contact layer" because of an alleged lack of an "evidentiary exhibit showing tapered sidewalls in the PJX138K."  Mot. at 11-12. This is simply false.  Defendant itself introduced exhibit DX-27—"8K Microtech Reports"—which contain numerous SEM images of the PJX138K and the tapered sidewalls of its source contact trenches:



DX-27.34 (cropped and annotations added).



DX-27.63 (cropped and annotations added).

FILED UNDER SEAL



DX-27.68 (cropped, zoomed, and annotations added); *see also* Trial Tr. (Vol. 2) at 299:17-307:15 (Microtech technician discussing document introduced as DX-27); *id.* at 356:8-20, 494:2-4 ("8K" MOSFET corresponds to Panjit PJX138); JX-14.5 (spec sheet for PJX138K identifying 8K marking); Dkt. 377. Exhibit DX-27 alone provides substantial evidence for the jury to conclude that the PJX138K's source contact trenches have tapered sidewalls.

Moreover, Dr. Neikirk's testimony also provides ample evidence that the PJX138K infringes the '634 Patent. Dr. Neikirk testified that he analyzed tear down images and reports, specification sheets, and technical documentation from ASUS, which demonstrated that the accused products contained PJX138K. Trial Tr. (Vol. 2) at 327:11-17, 339:10-18, 355:11-356:20, 357:18-359:16, 454:9-13. Dr. Neikirk also testified that he analyzed whether each of the accused MOSFETs—including the Panjit PJX138K (also referred to as the 38K or 8K)—infringe the '634 Patent. *Id.* at 363:25-364:6, 397:12-23, 419:2-436:4. Next, he identified the Panjit 2N7002K ("2K") MOSFET as representative of the other accused MOSFETs (including the PJX138K) and

FILED UNDER SEAL

explained why it was representative. *Id.* at 360:4-364:20. Then, Dr. Neikirk performed a detailed limitation-by-limitation explanation why the 2K infringed the '634 Patent. *Id.* at 397:20-417:20. Finally, he provided additional specific testimony for the Panjit PJX138K. Using both the admitted PJX138K's specification and a demonstrative SEM, Dr. Neikirk explained how the PJX138K infringes the '634 Patent—and especially the "lateral contact layer" limitation—in the same manner as the 2K. *Id.* at 388:3-389:20; PDX-3.4.

Dr. Neikirk's testimony is itself substantial evidence of infringement. There is no requirement that Dr. Neikirk's testimony be based on an admitted exhibit—only that it be based on facts and data that experts would reasonably rely upon. Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."). Indeed, expert testimony provides substantial evidence for infringement where the expert relies on appropriate facts and data and the expert provides testimony explaining infringement, including through use of demonstratives. *SSL Services, LLC v. Citrix Systems, Inc.*, 769 F. 3d 1073, 1088 (Fed. Cir. 2014) (expert testimony and demonstrative slides provided substantial evidence of infringement*); Motorola, Inc. v. Interdigital Technology Corp.*, 121 F. 3d 1461, 1470 (Fed. Cir. 1997) ("[t]he use of a demonstrative exhibit to facilitate [expert testimony] does not constitute improper evidence"); *Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1551-52 (Fed.Cir.1997); *ActiveVideo Networks v. Verizon Communications*, 694 F. 3d 1312, 1321 (Fed. Cir. 2012). Dr. Neikirk's testimony readily satisfies those standards. Indeed, there is no dispute that Dr. Neikirk *did* rely on SEMs of the PJX138K, nor is there any dispute that experts can reasonably rely on SEMs to show the shape of a source contact trench in a MOSFET. Nor is there a dispute that Dr. Neikirk illustrated his opinions to the jury with an SEM image of the PJX138K—the mere fact that the SEM was in a

FILED UNDER SEAL

demonstrative exhibit rather than an admitted exhibit does not diminish the sufficiency of Dr. Neikirk's testimony.

Even if there were a requirement that a jury base its infringement findings for each limitation on an admitted exhibit—there is not—that standard would be satisfied here. Using admitted exhibit DX-27 and Dr. Neikirk's demonstrative and testimony identifying the location of the lateral contact layer in the SEMs of PJX138K, the jury could have readily found that the source contact trenches of the PJX138K have tapered sidewalls. Thus, substantial evidence supports that the PJX138K infringes the '634 Patent.

### C.    The Non-Final Administrative Finding in the PTAB Is Not a Basis for Overturning the Judgment of Infringement as to the '409 Patent

Finally, ASUS argues that the judgment should be overturned because of a decision issued by a PTAB panel finding claim 1 of the '409 Patent invalid. Mot. at 12. But, infringement and invalidity are separate issues. *See Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 644 (2015) ("invalidity is not a defense to infringement, it is a defense to liability"). And, a Rule 50 motion cannot rely on materials outside the trial record. *Harman*, 166 F. Supp. 3d at 761. Nor should an administrative proceeding overturn the judgment of an Article III court after a jury trial. *See SEC v. Jarkesy*, 144 S. Ct. 2117, 2127 (2024) (overturning an administrative proceeding as violating Seventh Amendment); *In re Lockwood*, 50 F. 3d 966, 980 (Fed. Cir. 1995) (in an action at law, a patentee "is entitled under the Seventh Amendment to trial by jury … to determine validity of his patents"); *Gordon v. United States*, 117 U.S. 697, 702, 1864 WL 11666 (1865) (Article III courts' judgments are "final and conclusive upon the rights of the parties"); *Johnson v. Towsley*, 13 Wall. 72, 84-87, 20 L.Ed. 485 (1871).

Moreover, ASUS fails to note that Force MOS timely filed a request for director review of that decision, which remains pending as of the date of this filing. Ex. B. Under the Patent Office's

FILED UNDER SEAL

regulations, there is no "final agency decision" by the Patent Office until that Director Review process is complete.  37 CFR § 42.75(d)(1).  Moreover, even if Force MOS's Director Review request is unsuccessful, Force MOS will have the opportunity to challenge that decision on appeal to the Federal Circuit.  35 U.S.C. § 141(c).  Only after appeals have been exhausted can any cancellation certificate issue in an IPR.  35 U.S.C. § 318(b).  Thus, ASUS's Rule 50 motion as to this point is procedurally improper and entirely premature and speculative.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion.


Respectfully submitted,

Dated: August 6, 2025

/s/ *Christopher E. Hanba*
Christopher E. Hanba
Texas Bar No. 24121391
chanba@princelobel.com
Ariana D. Pellegrino *
MI Bar No. P79104
apellegrino@princelobel.com
Michael D. Saunders
Texas Bar No. 24107000
msaunders@princelobel.com
Joshua G. Jones
Texas Bar No. 24065517
jjones@princelobel.com
Bryan D. Atkinson
Texas Bar No. 24036157
batkinson@princelobel.com
* *Not admitted in Texas*

PRINCE LOBEL TYE LLP
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 737-2414

**FILED UNDER SEAL**

Joshua R. Thane
jthane@haltomdoan.com
Haltom & Doan
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800

*Attorneys for Plaintiff*
*Force MOS Technology Co., Ltd.*

**FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on August 6, 2025, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(7). I further certify that all counsel of record will be served with copies of any documents filed under seal via e-mail pursuant to Local Rule CV-5(c). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Christopher E. Hanba*
Christopher E. Hanba


## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), I certify that this pleading and supporting exhibits are being filed under seal pursuant to the Provisions of the Protective Order entered in this matter. (Dkt. No. 28.)

*/s/ Christopher E. Hanba*
Christopher E. Hanba