**FILED UNDER SEAL**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| FORCE MOS TECHNOLOGY, CO., LTD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 2:22-cv-00460-JRG ) |
| ASUSTEK COMPUTER, INC. | ) JURY TRIAL DEMANDED ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING INDIRECT INFRINGEMENT AND WILLFULLNESS**

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 2

III. ARGUMENT .................................................................................................................. 2

    A. Defendant did not Conduct a Reasonable Investigation ....................................... 2

    B. Defendant Continued to Commit Acts of Infringement After Being on Notice ..... 4

    C. The Jury Could Reasonably Conclude That ASUS Did Not Reasonably Rely on the Opinion Letters ......................................................................................... 5

    D. Defendant's Anticompetitive Retaliation Further Supports the Jury's Willfulness Finding................................................................................................ 9

IV. CONCLUSION.............................................................................................................. 10

**FILED UNDER SEAL**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abraham v. Alpha Chi Omega*,
  708 F.3d 614 (5th Cir. 2013) .................................................................................................. 2

*Acumed LLC v. Stryker Corp.*,
  483 F.3d 800 (Fed. Cir. 2007) ................................................................................................ 8

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) .............................................................................................. 5

*Bagby Elevator Co. v. Schindler Elevator Corp.*,
  609 F.3d 768 (5th Cir. 2010) .................................................................................................. 2

*Cont'l Cirs. LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) ............................................................................................ 6, 7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018) .............................................................................................. 2

*CR Bard Inc. v. AngioDynamics, Inc.*,
  979 F.3d 1372 (Fed. Cir. 2020) .............................................................................................. 8

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352, 1363 (Fed. Cir. 2004) .................................................................................... 2

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) .............................................................................................. 8

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ................................................................................................................ 4

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
  438 F.3d 1354, 1369 (Fed. Cir. 2006) .................................................................................... 5

*Gomez v. St. Jude Med. Diag. Div. Inc.*,
  442 F.3d 919 (5th Cir. 2006) .................................................................................................. 2

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
  359 U.S. 207, 212 (1959) ........................................................................................................ 9

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) .............................................................................................. 6

*Omega Patents, LLC v. CalAmp Corp.*,
  920 F. 3d 1337 (Fed. Cir. 2019) ............................................................................................. 5

*Parity Networks, LLC v. Cisco Sys., Inc.*,
  No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019) .............................. 5

**FILED UNDER SEAL**

*Solas OLED Ltd. v. Samsung Display Co.*,
  No. 2:19-CV-00152-JRG, 2021 WL 4950308 (E.D. Tex. Oct. 25, 2021)................................. 5

*TGIP, Inc. v. AT&T Corp.*,
  527 F. Supp. 2d 561 (E.D. Tex. 2007)................................................................................... 2

*TiVo Inc. v. EchoStar Commc'ns Corp.*,
  No. 2:04-CV-1-DF, 2006 WL 8409111 (E.D. Tex. Mar. 15, 2006)......................................... 8

*WBIP, LLC v. Kohler Co.*,
  829 F.3d 1317 (Fed. Cir. 2016) .............................................................................................. 8

**Statutes**

15 U.S.C. § 6a................................................................................................................................ 9

**Rules**

Fed. R. Civ. P. 50(a) ...................................................................................................................... 2

**FILED UNDER SEAL**

I.      **INTRODUCTION**

      Defendant ASUSTek Computer, Inc. ("ASUS" or "Defendant") moves for judgment as a matter of law that it is not liable for indirect infringement and that its infringement is not willful because it relied on opinions from a supplier's lawyers. Both of these issues turn on whether ASUS knew its acts were infringing, or acted egregiously, in reckless disregard, indifference, or willful blindness to Plaintiff's rights. But the jury, which is empowered to decide these questions, was presented with the alleged opinions from ASUS's suppliers, as well as allegedly exculpatory testimony from Defendant's corporate representative, and nevertheless found that Defendant did indirectly infringe and that its infringement was willful from the evidence presented at trial.

      Contrary to Defendant's arguments, Plaintiff produced ample evidence for the jury to conclude, as it did, that Defendant intended to infringe. Moreover, Defendant did not present any evidence at trial that it conducted a reasonable investigation into whether the accused MOSFETs in this case infringed either of the asserted patents, despite having the capability of doing so. Indeed, the opinion letters that Defendant relies upon are so obviously incorrect that they actually support infringement. Nor does Defendant even cite to any record evidence showing that the opinion letters were actually communicated to the decisionmakers at ASUS. Instead of appropriately responding to Plaintiff's pre-suit notice letters of infringement, Defendant continued to sell products containing the infringing MOSFETs without any interruption. Finally, the jury heard evidence that Defendant responded to Plaintiff's allegations of infringement, not by conducting its own investigation, but instead with anticompetitive retaliation in an effort to punish Plaintiff for rightly asserting its patents

      Therefore, the Court should deny Defendant's motion and maintain the jury's finding of indirect infringement and willfulness.

1

#5699505v4

FILED UNDER SEAL

## II. LEGAL STANDARD

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). The non-moving party must identify "substantial evidence" to support its positions. *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004).

"The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010)). A court must "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations." *Gomez v. St. Jude Med. Diag. Div. Inc.*, 442 F.3d 919, 937–38 (5th Cir. 2006).

## III. ARGUMENT

### A. Defendant did not Conduct a Reasonable Investigation

Defendant's sole argument is that it could not have willfully or indirectly infringed the asserted patents because its suppliers assured it that the accused MOSFET components were not infringing. As an initial matter, Defendant admits in its motion—and admitted at trial—that it did not conduct its own, independent investigation into whether the Accused MOSFETs infringed. Trial Tr. (Vol. 2) at 627:23-629:25 (Defendant's corporate representative testifying that Defendant did not conduct an independent analysis of its infringement). While Defendant attempts to argue

**FILED UNDER SEAL**

that the pre-suit notice letters identified incorrect MOSFET parts, or that the wrong entity was sent the pre-suit letters, it tellingly never states that it did not actually receive the letters or that it did not understand what components were accused of infringing. Defendant also omits that Plaintiff's pre-suit notice letters included detailed claim charts which included detailed scanning electron microscope (SEM) imaging from a lab. *See* JX-54, JX-55, JX-56, JX-57; *see also* Trial Tr. (Vol. 2) at 621:5-8 (Defendant acknowledging receipt of the pre-suit notice letters). Despite this, Defendant conducted no internal analysis of the accused components, nor did it present at trial any internal documentation evidencing an actual reasonable belief of non-infringement. Trial Tr. (Vol. 2) at 628:13-25. The fact that Defendant failed to conduct its own investigation alone is sufficient to support the jury's finding of willful and indirect infringement.

Furthermore, despite Defendant's argument that it could not have willfully infringed or indirectly infringed the asserted patents because it relied on the assurances of its suppliers, Defendant failed to call at trial a single witness from any of those suppliers to testify regarding the structure or operation of the accused MOSFETs. These suppliers instead remained in the background, and outside any trial testimony under oath, engaging only in private discussions with Defendant's expert and counsel. Trial Tr. (Vol. 3) at 827:15-828:5. Of the four suppliers responsible for the seven infringing MOSFET components, only one provided even a basic non-infringement position. Trial Tr. (Vol. 2), at 629:1-14; *see also* Trial Tr.(Vol. 3) at 993:6-10. The remaining three suppliers—LRC, Excelliance, and uPI/UBIQ—provided no infringement analysis. *See* Trial Tr. (Vol. 2) at 629:8-14.[1] Indeed, at trial, Defendant advanced non-

---

[1] This is especially concerning with regard to uPI/UBIQ, which shares overlapping directors and corporate control with Defendant. Trial Tr. (Vol. 1) at 203:21-204:4.

infringement arguments only as to a subset of the seven accused MOSFETs. Trial Tr. (Vol. 3) at 829:16-831:13.  And, as set forth herein, Defendant maintained its non-infringement defense while purposefully ignoring specific contradictory information. Trial Tr. (Vol. 1) at 256:7-258:21.  And, when Defendant's counsel arranged meetings between Defendant's expert and representatives of Defendant's suppliers, Defendant arranged those meetings such that the suppliers only selectively provided information on certain limited topics. Trial Tr. (Vol. 3) at 832:21-836:25.  Moreover, despite having had access to information from Defendant's suppliers, and despite having SEM imaging equipment available to him, Defendant's expert instead simply critiqued the reverse engineering images that Dr. Neikirk relied upon. *Id.* at 789:21-790:21, 823:15-837:3-10.

Thus, contrary to Defendant's assertions in its motion, Defendant actually refused to conduct its own factual investigation, and instead relied exclusively on third party indemnifiers' unreliable and unverified assurances.  Defendant made a deliberate choice not to look and remain willfully blind to the underlying facts regarding infringement by, for example, not conducting its own SEM imaging.  *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.").  Such behavior supported the jury's finding of willful and indirect infringement.

        **B.**       **Defendant Continued to Commit Acts of Infringement After Being on Notice**

The evidence at trial was clear and unequivocal: despite being put on notice of its infringement in Force MOS's pre-suit letters, ASUS continued to put infringing MOSFETs in its products. Trial Tr. at 590:16-595:10, 627:23-630:7.  It did not redesign its products nor demand that its suppliers do so. *Id.*  It took no affirmative steps to avoid infringement. *Id.*  Rather, all along, Defendant knew that its subsidiary was importing the accused products into the United

**FILED UNDER SEAL**

States for sale. Trial Tr. (Vol. 2) at 579:13-15, 581:6-13. This is sufficient evidence for the jury to infer that Defendant intentionally infringed. *See Solas OLED Ltd. v. Samsung Display Co.*, No. 2:19-CV-00152-JRG, 2021 WL 4950308, at *6, 8 (E.D. Tex. Oct. 25, 2021) (Gilstrap, J.); *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017).

### C. The Jury Could Reasonably Conclude That ASUS Did Not Reasonably Rely on the Opinion Letters

As noted above, ASUS only cites to opinion letters for certain MOSFETs provided by *one* of its suppliers—which is hardly sufficient given that other suppliers' MOSFETs were also found to infringe. In other words, for most of the MOSFETs, ASUS's motion cites no justification at all for a belief in non-infringement. Moreover, the letters from the one supplier that it relies upon do not support ASUS's argument that it lacked intent. Indeed, ASUS cites to no record evidence that any of the opinion letters were actually provided to decisionmakers in ASUS. *See Omega Patents, LLC v. CalAmp Corp.*, 920 F. 3d 1337, 1353 (Fed. Cir. 2019). Moreover, an opinion of counsel may not be reasonably relied upon if it is obviously incompetent. *See Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1369 (Fed. Cir. 2006) (finding that incompetent opinions of counsel can be properly considered evidence weighing in *favor* of willfulness).

ASUS points to JX-41 and JX-42—containing an opinion from Inergy's Taiwan counsel—regarding the '409 Patent.[2] However, that opinion is obviously incompetent, and thus ASUS's

---

[2] Because the opinion attached to the letter in JX-41 (beginning on JX-41.003) appears to be identical to the opinion in JX-42, and because Defendant makes no distinct arguments for those two opinions, they are treated interchangeably herein. Additionally, Defendant briefly references JX-46 and JX-49, but they appear substantially the same as JX-41 and JX-42, and thus the same reasoning applies to those letters.

**FILED UNDER SEAL**

alleged reliance on it was not reasonable. In particular, the basis of that opinion was the conclusion that the terms "substantially-square shaped cells with rounded corners" and "circular trench contact" would be interpreted as require being created via an "intentional[]" "design layout." JX-41.013-014. Inergy's Taiwan counsel then concluded that because *one* of Inergy's "design layouts" had square shapes without "truncated corners," it could not infringe the "substantially-square shaped cells with rounded corners" limitation. JX-41.024. Similarly, they concluded that "circular trench contact" could not be infringed because the layout did not have a "circular shape in design layout." JX-41.025. However, it is plainly improper to import a requirement that a product be "intentionally" made in a particular way into an apparatus claim like claim 1 of the '409 Patent. *See* Dkt. 132 at 30 (citing *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 798-99 (Fed. Cir. 2019)); *see also Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1377 (Fed. Cir. 2017) ("direct infringement is a strict-liability offense that does not require knowledge of the patent or intent to infringe"). Thus, because those opinions were based on clearly unreasonable interpretations of the claim, it was not reasonable for ASUS to rely upon them.

The letter regarding the '409 Patent also renders an opinion that "said circular trench contact is separate from said trenched gates with said source region and body region disposed between a gate oxide lining of said trenched gates" merely because Plaintiff's claim charts did not specifically point out the gate oxide. JX-41.025. But that is not a basis for affirmatively believing a product does not infringe. In fact, the "gate **o**xide" is the "O" in MOSFET and is a fundamental, mandatory part of every MOSFET. Trial Tr. (Vol. 2) at 329:1-4, 362:11-14, 377:10-16. Indeed, the non-infringement opinions in Inergy's Taiwan counsel's letter were all so objectively unreasonable that ASUS did not even attempt to have its expert advance them at trial. Thus, the jury could have readily found that Defendant could not reasonably rely on any of those opinions.

6

**FILED UNDER SEAL**

ASUS points to DX-16—another opinion letter from Inergy's Taiwan counsel—regarding the '634 Patent.[3] That opinion letter was also obviously incompetent and not reasonable to rely upon for similar reasons. The letter's first, and primary, argument was that Force MOS's claim charts did not present sufficient evidence of infringement and that it found the claim charts "contradictory" and confusing. DX-16.012-.013. However, as ASUS's own motion contends, Inergy certainly *did* have the evidence regarding how its MOSFETs are designed, and thus it was not reasonable for ASUS to rely on a non-infringement opinion that simply critiqued Force MOS's claim charts, rather than actually identifying specific reasons that the accused products do not satisfy specific limitations. The second opinion in the letter was that the 2N7002K did not infringe because, during manufacturing, they do not practice an unclaimed aspect of the preferred embodiment of Fig. 3B of the '634 Patent where *two* ion implantation procedures are performed. DX-16.013. This was clearly an incompetent construction because it improperly reads *process* limitations from a preferred embodiment into an *apparatus* claim without any basis. *Cont'l Cirs.*, 915 F.3d at 798-99. Indeed, that construction was so defective that ASUS did not even attempt to advance it during claim construction in this Court. Dkt. 58 at 10-11.

Finally, DX-16 asserted that there is no coverage of the "entire sidewall" by a lateral contact layer. DX-16.014   However, that opinion was obviously incorrect because it was not based on any information provided by Inergy, but rather was "[b]ased on the image" "provided by Force MOS." *Id.* Moreover, the same letter opined that such images cannot "show the true shape" of doped regions. DX-16.012. Indeed, Defendant has repeatedly argued—to the Court and to the

---

[3] Defendant also briefly references JX-48, but that appears substantially the same as DX-16, and thus the same reasoning applies to that opinion letter.

**FILED UNDER SEAL**

jury—that merely looking at an SEM does not indicate the doping concentration of regions. *See* Dkt. 436 at 7-8 (citing Trial Tr. at 310:19-23, 520:19-521:1, 799:21-800:4). Nor is there any evidence that Inergy, ASUS, or any other supplier of the accused MOSFETs attempted to perform any independent testing to determine the doping concentrations of the regions. *See Datascope Corp. v. Smec, Inc.*, 879 F. 2d 820, 828-29 (Fed. Cir. 1989). Thus, the jury could have readily found that Defendant could not have reasonably relied on any of the opinions in DX-16.

Ultimately, the question of whether ASUS reasonably, in good faith, relied on opinions of counsel is one for the jury based on all of the evidence. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Willfulness largely turns on intent, which is an issue reserved to the jury."); *CR Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1380 (Fed. Cir. 2020) ("the question of whether AngioDynamics reasonably believed that the asserted claims were invalid was a question of fact for the jury").; *TiVo Inc. v. EchoStar Commc'ns Corp.*, No. 2:04-CV-1-DF, 2006 WL 8409111, at *1 (E.D. Tex. Mar. 15, 2006) (the "determination of EchoStar's intent and the reasonableness of its actions will likely come down to credibility determinations"); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1222 (Fed. Cir. 2014) (questions of "intent are quintessential jury questions"); *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 811 (Fed. Cir. 2007) ("The jury here was free to disbelieve or weigh lightly evidence tending to show Stryker's reliance on the opinion letter and to place that evidence within the overall factual context of the case."). Thus, in reaching a conclusion as to intent, the jury was free to weigh the totality of the evidence, including the credibility of Dr. Neikirk and his infringement opinions and the credibility of ASUS's witnesses and the non-infringement opinions. Nothing that ASUS cites would have compelled a jury to conclude that it reasonably relied on these factually unsupported opinions of counsel.

**FILED UNDER SEAL**

### D.  Defendant's Anticompetitive Retaliation Further Supports the Jury's Willfulness Finding

While Defendant's willfully blind behavior demonstrated above supports the jury's verdict as to indirect infringement and willfulness, Defendant went even further in its willful behavior in by attempting to actively punish Plaintiff for making its infringement allegations in the first place. During the trial, the jury heard evidence that Defendant's Deputy Director contacted various third-party battery manufacturers in an effort to anticompetitively "ban" the third parties from using Plaintiff's products. Trial Tr. (Vol. 1) at 256:7-11.  The sole reason for the potential ban "was because Force MOS . . . brought this litigation against ASUS[.]" *Id*. at 256:23-257:10. Defendant then only "suspend[ed]" the potential ban "when [Defendant] received the deposition notice" for its Deputy Director (*id*., 258:17-259:2), but was considering reinstituting the potential ban "after the conclusion of [this case.]" *Id*. at 259:3-7.  The effect of such a retaliatory ban would not only implicate the batteries supplied to Defendant, but further, as Defendant acknowledged at trial, ban Plaintiff's products from all of the battery manufactures selling batteries to companies other than Defendant. *Id*. at 260:1-18.  That is, Defendant responded to Force MOS's assertion of its patent rights by planning a group boycott of Plaintiff's products.

Attempting to organize a group boycott of Plaintiff is plainly unlawful and egregious and supports the jury's finding of willful infringement in this case. *See Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 212 (1959); *see also* 15 U.S.C. § 6a (U.S. antitrust laws apply to conduct having direct, substantial, and reasonably foreseeable effect on U.S. imports).  Moreover, a jury could reasonably infer, from Defendant's retaliatory behavior, that Defendant was not actually relying on the opinions of counsel—it would not have been so desperate to anticompetitively retaliate against Force MOS if Defendant genuinely believed it did not infringe.  As a result, Defendant's motion should be denied and the jury's verdict should not be disturbed.

**FILED UNDER SEAL**

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Rule 50(b) motion as to the jury's finding of indirect and willful infringement.

Respectfully submitted,

Dated: August 6, 2025

/s/ *Christopher E. Hanba*
Christopher E. Hanba
Texas Bar No. 24121391
chanba@princelobel.com
Ariana D. Pellegrino *
MI Bar No. P79104
apellegrino@princelobel.com
Michael D. Saunders
Texas Bar No. 24107000
MSaunders@princelobel.com
Joshua G. Jones
Texas Bar No. 24065517
jjones@princelobel.com
Bryan D. Atkinson
Texas Bar No. 24036157
batkinson@princelobel.com
* Not admitted in Texas

PRINCE LOBEL TYE LLP
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 737-2414

Joshua R. Thane
jthane@haltomdoan.com
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800

*Attorneys for Plaintiff*
*Force MOS Technology Co., Ltd.*

**FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on August 6, 2025, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(7). I further certify that all counsel of record will be served with copies of any documents filed under seal via e-mail pursuant to Local Rule CV-5(c). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

                                                  */s/ Christopher E. Hanba*
                                                  Christopher E. Hanba

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), I certify that this pleading is being filed under seal pursuant to the Provisions of the Protective Order entered in this matter. (Dkt. No. 28.)

                                                  */s/ Christopher E. Hanba*
                                                  Christopher E. Hanba